## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DUSTIN MICHAEL SLAUGHTER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-1406 (TSC) |
| | ) | |
| NATIONAL OCEANIC AND | ) | |
| ATMOSPHERIC ADMINISTRATION, | ) | |
| Defendant. | | |

## PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Dustin Michael Slaughter ("Plaintiff" or "Slaughter"), initiated this action against Defendant, the National Oceanic and Atmospheric Association ("NOAA" or "Defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. 552 on May 17, 2023. Complaint ECF No. 1. Plaintiff filed a FOIA Request seeking the disclosure of records maintained by Defendant on March 16, 2022. In Plaintiff's FOIA Request, Plaintiff sought:

> "Any and all records exchanged between the National Oceanic and Atmospheric Administration and the Office of the National Director of Intelligence (ODNI) regarding unidentified aerial phenomena (UAP), unidentified flying objects (UFOs), unidentified submerged objects (USOs), unidentified objects, unidentified craft, the Advanced Aerospace Threat Identification Program (AATIP), Advanced Aerial Threat Identification Program (AATIP), the

Unidentified Aerial Phenomena Task Force (UAPTF), the Airborne Object

Identification and Management Executive Council (AOIMEXEC), the Airborne

Object Identification and Management Synchronization Group (AOIMSG)" from

This request includes any and all emails, email attachments, physical

correspondence, memorandums, photographs, videos, official reports, bulletins,

meeting minutes, maps, audio recordings, and any and all other responsive

records and segregable materials. "December 1, 2022 up to the present."

The Complaint was served to Defendant on May 23, 2023. The Proof of Service was

filed with the Court on July 26, 2023. Document 6. Defendant has denied possession of any

records that are responsive to Plaintiff's Request. For the reasons set forth below, NOAA's

search was not adequate, nor has NOAA established that any material withheld is exempt from

release. To date, Plaintiff has not received any responsive records. ¶ 11 Declaration of Dustin

Michael Slaughter ("Slaughter Decl."). Based on the facts of the case, Plaintiff is entitled to

summary judgment.

Plaintiff's Motion includes action from the Court as follows: that the Court grant

Plaintiff's Motion for Summary Judgment, order Defendant to conduct an adequate search

within 30 days of the Court's order, order Defendant to release non exempt records within 60

days of the Court's order, order the parties to file a joint status report within 90 days of the

Court's order and enter an order for such relief as the court deems reasonable and just.

Plaintiff has fully complied with Local Rule 7(m) and has provided a Certification of

Compliance with LVCR 7(m) showing the efforts to confer with Defendant on this

Motion. [Filed Herein].

**BACKGROUND**

In May 2021, a leaked video from the United States Navy ("Navy") depicted an unidentified object hovering over the water off the coast of California. The unidentified object then plunged into the water, disappearing from view. The Department of Defense later confirmed the authenticity of this video, and indicated that the occurrence was being investigated as an unidentified aerial phenomenon ("UAP"). Document 1-10. UAP's are simply flying objects that have not yet been identified - there is no conclusive classification of these objects. There is currently widespread interest in the documentation, identification, and investigation of UAP's. This is a task that has been undertaken by everyone from government officials to journalists. Indeed, on July 14, 2023, Senate Majority Leader Charles Schumer (D-NY) in announcing bipartisan legislation with Senator Mike Rounds (R-SD) affirmed in a press statement: "For decades, many Americans have been fascinated by objects mysterious and unexplained and it's long past time they get some answers. The American public has a right to learn about technologies of unknown origins, non-human intelligence, and unexplainable phenomena. We are not only working to declassify what the government has previously learned about these phenomena but to create a pipeline for future research to be made public." ¶ 11 Slaughter Decl.

Plaintiff is an independent journalist, and has written and shared multiple articles about UAP's that are available to the public. ¶ 1 Slaughter Decl. During Plaintiff's decade-long career as an independent journalist, Plaintiff has utilized public record requests to accurately report important information to the public. *Id*.

On March 16, 2022, Plaintiff filed a FOIA Request with Defendant. ¶ 2 Slaughter Decl. Plaintiff's request seeks information about Unidentified Aerial Phenomena (UAP) and

Unidentified Undersea Phenomena (UUP) related records held by Defendant NOAA, specifically: "Any and all records exchanged between the National Oceanic and Atmospheric Administration and the Office of the National Director of Intelligence (ODNI) regarding unidentified aerial phenomena (UAP), unidentified flying objects (UFOs), unidentified submerged objects (USOs), unidentified objects, unidentified craft, the Advanced Aerospace Threat Identification Program (AATIP), Advanced Aerial Threat Identification Program (AATIP), the Unidentified Aerial Phenomena Task Force (UAPTF), the Airborne Object Identification and Management Executive Council (AOIMEXEC), and the Airborne Object Identification and Management Synchronization Group (AOIMSG)." ¶ 12 Complaint, ECF No. 1.

Rather than fulfill Plaintiff's Requests under the statutory time, and fulfill Defendant's duty, as mandated by FOIA. 5 U.S.C § 552, Defendant stated that they had no records responsive to Plaintiff's Request. ¶ 3 Slaughter Decl. However, there is outside evidence proving Defendant's conclusion is unfounded. ¶ 12,13,14, 15,16,17 Slaughter Decl.

### The Freedom of Information Act's Purpose

FOIA ensures "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Congress enacted FOIA to "pierce the veil of administrative secrecy, and to open agency actions to the lights of public scrutiny," *Freedom Watch, Inc. v. United States Department of State*, 77 F.Supp.3d 177, 181 (D.D.C 2015) citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.ed.2d 11 (1976), and to provide the public with "access to official information long shielded unnecessarily from public view." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242

(1978).

The basic thrust of the Freedom of Information Act, 5 U.S.C. § 552, was reviewed by the Supreme Court in *EPA v. Mink*, 410 U.S. 73, 79-80 (1973). The Act revises § 3, the public disclosure section, of the Administrative Procedure Act, 5 U.S.C. § 1002. The revision was deemed necessary because "section 3 was generally recognized as falling far short of its disclosure goals and came to be looked upon more as a withholding statute than a disclosure statute." *Mink*, *supra*, at 79. Congress revised the law and stated that the basic purpose reflected "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965) (hereinafter S. Rep. No. 813).

FOIA repeatedly states "that official information shall be made available, 'to the public,' 'for public inspection.'" *Mink*, supra, at 79. There are, however, exemptions from compelled disclosure. They are nine in number that are set forth in § 552 (b). But these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act. Congress also defined the term "search" at 5 U.S.C. § 552 (a)(3)(D).

Without question, FOIA is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands. Subsection (b) is part of this scheme and represents the congressional determination of the types of information that the Executive Branch must have the option to keep confidential if it so chooses. As the Senate Committee explained, it was not an easy task to balance the opposing interests, but it is not an impossible one either. . . . "Success lies in providing a workable

formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." S. Rep. No. 813, p. 3. 4.

### The Legal Standard for Summary Judgment

A motion for Summary judgment must be granted when the record shows that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).

A genuine issue of material fact is one that would change the outcome of the litigation. See *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"). Courts must view "the evidence in the light most favorable to the nonmovant," "draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.- Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA cases typically and appropriately are decided on motions for summary judgment. See *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In these cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any records, *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007), and this burden "cannot be met by mere conclusory statement[,]" *Downs Law Group, P.A. v. United States Coast Guard*, No. CV 21-2407 (RBW), 2023 WL 4744044, 5. (D.D.C. July 25, 2023). (quoting *Wash. Post Co.,* 863 F.2d at 101). In addition, federal agencies are required to disclose upon request, board classes of agency records that are not covered by the statute's exemptions.

*Id* at 6. If the Court concludes that the non-moving party has failed to meet its burden of proof, then the moving party is entitled to summary judgment. *Downs* at 5.

The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). However, summary judgment may be granted to the agency in a FOIA case only if the agency can prove that there are no material facts in dispute, and it has demonstrated that the documents that were requested either have been produced or are "wholly [, or partially, exempt from [disclosure]." *Down* at 7 (quoting *Student Against Genocide*, 257 F.3d at 833).

The standard of review is de novo. This type of review of an agency decision "requires the Court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Courts shall be mindful, however, that "congressional intent tilt[s] the scale in favor of disclosure." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. 2007).

### Plaintiff Has Constructively Exhausted His Administrative Remedies

Plaintiff has constructively exhausted his administrative remedies; there is no other path for Plaintiff to receive relief.

On March 16, 2022, Plaintiff filed a request to Defendant, using Defendant's FOIA portal. Plaintiff's request seeks Unidentified Aerial Phenomena (UAP) and Unidentified

Undersea Phenomena (UUP) related records held by Defendant. Shortly after receipt of

Plaintiff's request for records, Defendant acknowledged this request and assigned it reference

number DOC-NOAA-2022-001129. As the statutory deadline for completion of this request

was on or around April 21, 2022, Plaintiff, on May 3 and May 9, 2022, requested an

estimated date of completion from Defendant, as permitted under FOIA. 5 U.S.C.

552(a)(7)(B). No response was received. On May 11, 2022, NOAA returned a "no records"

response.

On May 11, 2022, Plaintiff appealed NOAA's no records response. Plaintiff pointed

out in his administrative appeal that UAP-related records likely exist due to the fact that

NOAA provided input to the Office of Director of National Intelligence's *Preliminary*

*Assessment: Unidentified Aerial Phenomena*.

On May 16, Plaintiff acknowledged receipt of Defendant's appeal and gave it caption

DOC-OS-2022-001632. Despite attempts to obtain an estimated date of completion from

Defendant on December 1, 2022, and February 9, 2023, and April 20, 2023 Plaintiff to-date

has received no estimate. ¶ 11 Slaughter Decl.

### Defendant Failed to Perform an Adequate Search

Defendant failed to perform an adequate search.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was `reasonably calculated to uncover all relevant documents.'" *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

"The adequacy of an agency's search for documents requested under FOIA "is judged by

a standard of reasonableness and depends, not surprisingly, upon the facts of each case."

*Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). When considering if a search was

adequate, "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Id*.

An assertion of a reasonable search for the material responsive to Plaintiff's request, or some similar assertion, is a critical prerequisite to any determination that Defendant has performed an adequate search. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena*, 180 F.3d at 325.

Plaintiff upon knowledge and belief alleges that Defendant possesses records responsive to this request for reasons put forth below and has not searched for and released these records:

1. A spokesperson for Defendant indicated in an email to Plaintiff on April 25, 2023 that Defendant "did participate in past interagency discussions" and "was involved in the review/ approval process for the 2022 ODNI UAP Report to Congress." ¶ 9 Slaughter Decl.

2. A former Deputy Administrator for Defendant wrote a piece of commentary with a former Deputy Assistant Secretary of Defense for Intelligence calling for serious and robustly funded research into Unidentified Undersea Phenomena (UUP). Plaintiff in-part seeks records from Defendant on UUP in addition to UAP. ¶ 10 Slaughter Decl.

3. Spokespersons for the United States Department of Defense -- including the current head of the Pentagon's UAP office, the All-domain Anomaly Resolution Office (AARO), and

Pentagon Press Secretary Pat Ryder -- have publicly discussed Defendant's assistance with the

DOD and other interagency partners regarding the topic of UAP. ¶ 11 Slaughter Decl.

4. A leaked US Navy video publicized in May 2021 depicts an unidentified object

hovering over the water off the coast of California before plunging into the waves. The DOD

confirmed the video's authenticity and indicated that the video was being investigated by the

Pentagon as an unidentified phenomenon. ¶ 12 Slaughter Decl.

These events suggest the Defendant is in possession of records responsive to Plaintiff's

request, and that Defendant is withholding these records in violation of the Freedom of

Information Act.

## CONCLUSION

Prior to filing suit, Plaintiff exhausted all other avenues for relief. Defendant issued a

determination, stating that Defendant possessed no records responsive to Plaintiff's request;

however, there is substantial evidence showing that Defendant does have records. Plaintiff

requests that the Court grant Plaintiff's Motion for Summary Judgment, order the defendant to

conduct an adequate search within 30 days of the Court's order, order the Defendant to release

non exempt records within 60 days of the Court's order, order the parties to file a joint status

report within 90 days of the Court's order and enter an order for such relief as the court deems

reasonable and just.


Dated this 2 day of August, 2023

Respectfully Submitted,

/s/ C. Peter Sorenson
C. Peter Sorenson
DC Bar #438089

Sorenson Law Office
PO Box 10836
Eugene, OR 97440
(541) 606-9173
peter@sorensonfoialaw.com

*Attorney for Plaintiff*