UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DUSTIN MICHAEL SLAUGHTER, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-1406 (TSC) |
| ) | |
| NATIONAL OCEANIC AND ) | |
| ATMOSPHERIC ADMINISTRATION, ) | |
|    Defendant. | |

**DECLARATION OF DUSTIN MICHAEL SLAUGHTER**

1. My name is Dustin Michael Slaughter and I am the plaintiff of this case. I reside in Philadelphia, Pennsylvania. I have been a part-time journalist for approximately 10 years, and during that time I have consistently used state and federal public record laws to access records to source my reporting accurately and thoroughly.

2. I filed the request that became this judicial review on March 16, 2022. It was attached to the Complaint filed in this action–Document 1-5

3. Defendant agency captioned the matter DOC-NOAA-2022-001129. It was attached to the Complaint filed in this action–Document 1-11.

4. On May 11, 2022, Defendant agency issued a 'No Records' final determination. The final determination was attached to the Complaint filed in this action–Document 1-14.

5. I subsequently appealed on May 11, 2022, arguing that an inadequate search for responsive records was conducted. The Appeal attached to the Complaint filed in this action–Document 1-15.

6. Defendant agency issued DOC-OS-2022-001632 as the appeal number. It was attached to the Complaint filed in this action–Document 1-16

7. On December 1, 2022, I requested an estimated date of completion as allowed by statute FOIA. 5 U.S.C. 552(a)(7)(B). It was attached to the Complaint filed in this action–Document 1-17.  I received no response.

8. On February 9, 2023, I requested another estimated date of completion as allowed by statute FOIA. 5 U.S.C. 552(a)(7)(B).  It was attached to the Complaint filed in this action–Document 1-18. I received no response.

9. On April 20, 2023, I requested another estimated date of completion as allowed by statute FOIA. 5 U.S.C. 552(a)(7)(B). It was attached to the Complaint filed in this action–Document 1-19.

10. Defendant responded that this Request would be forwarded to the Department of Commerce Appeals Office.  It was attached to the Complaint filed in this action–Document 1-20. No subsequent response has been received to-date.

11. As of the date of the filing of this Declaration, Defendant has not issued a final response or decision on my administrative appeal. As such, I have been forced to retain legal counsel in this matter to seek remedy for Defendant's violation of the statute.

12. On April 25  2023, I received an email from a spokesperson for Defendant, the email states that Defendant "did participate in past interagency discussions." and "was involved

in the review/ approval process for the 2022 ODNI UAP Report to Congress." It was attached to the Complaint filed in this action–Document 1-6.

13. Former Deputy Administrator for Defendant published an article with a former Deputy Assistant Secretary of Defense for Intelligence, calling for serious and robustly funded research into Unidentified Undersea Phenomena (UUP). It was attached to the Complaint filed in this action–Document 1-7.

14. A Spokesperson for the United States Department of Defense publicly discussed Defendant's assistance with the DOD and other interagency partners regarding the topic of the UAP. It was attached to the Complaint filed in this action–Document 1-8.

15. Pentagon Press Secretary Pat Ryder also discussed Defendant's assistance with the DOD and other interagency partners regarding the topic of the UAP. It was attached to the Complaint filed in this action–Document 1-9.

16. A leaked US Navy video publicized in May 2021 depicts an unidentified object hovering over the water off the coast of California before plunging into the waves. The DOD confirmed the video's authenticity and indicated that the video was being investigated by the Pentagon as an unidentified phenomenon. It was attached to the Complaint filed in this action–Document 1-10.

17. On Page 2 of the Office of Director of National Intelligence's June 25, 2021, *Preliminary Assessment: Unidentified Aerial Phenomena*, the NOAA is listed among other agencies as providing "input" to the Unidentified Aerial Phenomena Task Force UAPTF and the ODNI National Intelligence Manager for Aviation during the drafting of the report. It then stands to reason that the NOAA would have responsive records involving communications with ODNI regarding the UAPTF, UAP, etc. The Defendant, among

other agencies, has been involved in the government's handling of this topic (to a degree not yet known) since the aftermath of a series of stunning articles published in the New York Times in 2017. Exhibit 101 is attached and made part of this Declaration.

18. Based on the events described above and the numerous reports discussing Defendant's participation in investigating UAP related matters, I am confident that Defendant agency has not performed an adequate search for records.

19. I strongly believe that responsive records are important to increasing the public's understanding of the complex, timely, and fascinating issue of unidentified anomalous phenomena. UAP, and by extension, unidentified submerged phenomena, may represent a groundbreaking discovery in humankind's current understanding of physics and our universe. The fact that government agencies that work for the American public have admitted that these phenomena are real and that possess information on these phenomena makes transparency all the more critical. Any responsive records in possession by Defendant, barring those that pose a legitimate threat to national security, belong to the public and therefore should be released as soon as possible.

20. I intend to utilize responsive records from Defendant to publish accurate and even handed journalism with the goal of enriching the public's understanding of the issue of UAP and/or USP. I intend to publish either independently <u>on my own reporting platfor</u>m– *The UPA Register* or through an established online news publisher with the hope that larger news media outlets pick up the story and contribute their own reporting, and in so doing, deliver information to an even larger audience than Plaintiff can reach.

21. To conclude, unidentified anomalous phenomena, be they in our skies or in our oceans, cannot be timelier. This month, for instance, senior members of the Senate Select

Committee on Intelligence <u>have called for yet another round of hearings on UAP</u>, <u>in addition to planning new UAP-related legislation</u>; the National Aeronautics and Space Administration made history by <u>holding its first public hearing on UAP</u> this year; and additional reports from the Pentagon's All-domain Anomaly Resolution Office, <u>an organization mandated by Congress to investigate these phenomena</u>, are forthcoming later this year.

22. I have read the Complaint, and all facts alleged in the Complaint are true and accurate.
23. In accordance with 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I affirm that the above is true and correct to the best of my knowledge.


Dated this 2 of August of 2023


*/s/* Dustin M. Slaughter

Dustin M. Slaughter

**Exhibit 101**

# Leaked Navy video appears to show UFO off California

The video was recorded July 2019 by Navy aircraft, according to filmmaker Jeremy Corbell.

Source: https://www.nbcnews.com/news/us-news/leaked-navy-video-appears-show-u-f-o-california-coast-n1267688

May 17, 2021, 5:12 PM EDT / Updated May 17, 2021, 5:19 PM EDT
By Gadi Schwartz and Tim Stelloh

A newly leaked Navy video appears to show an unidentified flying object disappearing into the water off California, according to a clip obtained by a documentary filmmaker and shared with NBC News.

The video was captured in July 2019 by Navy aircraft and recorded in the USS Omaha's Combat Information Center, according to the filmmaker, Jeremy Corbell.

The clip appears to show a spherical object flying above the water for a few minutes near San Diego before it vanishes.

"It splashed," military personnel can be heard saying in the video.

The Defense Department confirmed that the clip was recorded by Navy personnel and said it will be reviewed by the Pentagon's Unidentified Aerial Phenomena Task Force, a panel established last year to "gain insight" into the "nature and origins" of such objects.

The video was published a few days before "60 Minutes" aired an interview with two former Navy pilots who recalled having been dispatched to investigate "multiple anomalous aerial vehicles" that descended 80,000 feet in less than a second. The incident also occurred off San Diego in 2004.

One of the pilots, Cmdr. Dave Fravor, told "60 Minutes" that personnel found a "little white Tic-Tac-looking object" moving above the water before

it disappeared. Seconds later, his ship — the USS Princeton — said the object reappeared on its radar 60 miles away.

Christopher Mellon, a top defense official in the Clinton and George W. Bush administrations, said in an interview that there was "a lot of continuity" between recent reports of unidentified objects and reports dating back decades.

"What we're seeing are a number of distinct and different things," he said. "Sometimes we're seeing a 50-foot object that can travel at hypersonic speeds and seemingly go into orbit or come down from altitudes of potentially above 100,000 feet."

Mellon said the stigma associated with reporting such phenomena has long kept witnesses quiet — a sentiment echoed by Lt. Cmdr. Alex Dietrich, one of the Navy pilots interviewed by "60 Minutes."

"Over beers we've said, 'Hey man, if I saw this solo, I don't know that I would have come back and said anything,'" Dietrich said. "Because it sounds so crazy when I say it."

A lengthy story in The New Yorker titled "How the Pentagon Started Taking U.F.O.s Seriously" examined the work of journalist Leslie Kean last month. Kean co-wrote an article in The New York Times four years ago reporting that the Pentagon was spending millions of dollars on a threat identification program to examine unidentified aircraft that moved at high velocities with no apparent signs of propulsion.